## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN M. PEEK,  PAUL C. OFFUTT,    :
individuals,  and CLEAR FLOOR CARE, LLC,  :
a Georgia Company,    :  Case No.  13-CV-_____
    :
        Plaintiffs    :
    :
v.    :
    :
THOMAS WHITTAKER , an individual,    :
and R.E. WHITTAKER COMPANY,    :
Pennsylvania Corporation,    :
    :
        Defendants    :
    :
    :

## COMPLAINT

### I.    JURISDICTION

1.    Jurisdiction of the Court over the instant lawsuit is based upon 42 U.S.C. §1331, Federal Question, in that some of the claims asserted by Plaintiffs herein are based upon statutes of the United States of America.

2.    Jurisdiction of the Court over the instant lawsuit is also based upon 42 U.S.C. §1332, Diversity of Citizenship, in that all of the Plaintiffs are citizens of a different state than that of which all Defendants are citizens.

### II.    VENUE

3.    Venue in the United States District Court for the Western District of Pennsylvania is proper pursuant to 28 USCS § 1391 (b)(1) and (2) as the Defendants are residents of this District and the conduct giving rise to the causes of action set forth herein occurred in this District.

{S0503912.1}

**III.    PARTIES**

4.      Plaintiff, Stephen M.  Peek ("Peek"), is an individual resident of the state of Georgia.

5.      Plaintiff, Paul C. Offutt ("Offutt") is an individual resident of the state of Georgia.

6.      Plaintiff Clear Floor Care, LLC ("Clear Floor"), is a limited liability company organized under the law of the State of Georgia.

7.      Defendant, Thomas Whittaker  ("Whittaker"), is an individual resident of the Commonwealth of Pennsylvania who, at all times relevant, was the chief operating officer and either majority or sole shareholder of Defendant R.E. Whittaker Company.

8.      Defendant, R.E. Whittaker Company ("Company") is a for-profit corporation organized under the laws of the Commonwealth of Pennsylvania.

**IV.   FACTS**

9.      Since approximately 1961, Company has engaged in the business of providing to individuals and other business entities, such as hotels, convention centers and personal care facilities carpet-cleaning machines and the fluids used with the machines.

10.     From August 17, 2001 to October 13, 2008, Paul Wood Stephenson ("Stephenson") was an employee of Company.

11.     From June 21, 2007 to June 21, 2008 Offutt was an employee of Company.

12.     Plaintiff Peek is and has been involved in various businesses in Georgia.

13.     Peek was never an employee of the Company.

14.     Peek had never been in Pennsylvania and had never done business in Pennsylvania.

{S0503912.1}

15.     On June 21, 2008, Offutt's employment with Whittaker was terminated without cause by Whittaker.

16.     Stephenson was terminated from his employment with Whittaker on October 13, 2008.

17.     Peek did not know and never communicated with Stephenson until they were both named in the lawsuit identified below.

18.     During a period of time following the termination of Offutt's employment, he and Peek began to discuss opportunities to start their own business organization for the purpose of selling carpet cleaning machinery and the fluids used with those machines.

19.     Offutt, unknown to Peek, was also in conversation with Stephenson about joining in a new enterprise to sell such machinery and fluids.

20.     In an effort to determine what manufacturer's machines they would sell, Peek contacted, among other manufacturers, RotoWash, a company from Austria, which manufactured carpet-cleaning machines for distribution in the United States and elsewhere.

21.     On October 22, 2008, Company, at the direction of Whittaker, filed suit against the Plaintiffs herein in the Court of Common Pleas of Lawrence County, Pennsylvania. (Exhibit 1 hereto)

22.     The complaint set forth Ten (10) counts against Peek, Stephenson and Offutt.

23.     Whittaker signed the verification attesting that all of the facts set forth in the complaint were true.

24.     Virtually all of the counts in the complaint were based on Company's allegations that Plaintiffs were using trade secret information belonging to Company.

25.     On January 13, 2009, Company at the direction of Whittaker filed a second lawsuit in the Court of Common Pleas of Lawrence County in which Plaintiff Clear Floor was named as a defendant. (Exhibit 2 hereto)

26.     Company also filed a motion for a preliminary injunction which motion sought to prevent Plaintiffs from entering into competition with Company in the business of selling carpet-cleaning machines and fluid. (Exhibit 3 hereto)

27.     A hearing on the Motion for a Preliminary Injunction was conducted before the Lawrence County Court of Common Pleas on December 3, 15, 16 and 17, 2008.

28.     During the preliminary hearing, Company presented several witnesses for the purpose of supporting its claim that Plaintiffs were stealing and using the trade secret information belonging to Company.

29.     Company presented the testimony of an alleged computer expert who testified to an alleged investigation he conducted into the alleged use by Stephenson of various external data storage devices to copy from the computer network of Company the customer list data stored in a data base called Everest licensed to Company.

30.     The expert testified among other things that his investigation had shown that Stephenson had, immediately prior to the termination of his employment, attached to his company laptop computer two external data storage devices, to-wit, an external hard drive called the "WD Passport" and a thumb drive, which, the expert testified were capable of being used to download from Company's computers all of the data contained in the Company's customer data bases, particularly the data base identified as "Everest."

31.     The Company's counsel implied, through the expert's testimony, that Stephenson had copied Company's customer list and customer data to the two external storage devices.

32.     Company claimed that the data base allegedly copied by Stephenson contained information about special customer needs, customer contacts and other customer-related information which Company and Whittaker claimed was trade secret information belonging to Company.

33.     Company offered the thumb drive into evidence.

34.     During the preliminary injunction hearing, Company presented alleged evidence that Plaintiffs were using or attempting to use fluids made of the same chemical formulas as those used by Company.

35.     Company claimed that the formulas of the fluids were the trade secrets of Company.

36.     Company claimed that the identity of the manufacturer of the fluids was Company's trade secret information.

37.     During the preliminary injunction hearing, Company claimed that the identity of its equipment manufacturer, RotoWash, was a trade secret and that it was the sole authorized distributor of RotoWash machines in the United States, Mexico and Canada.

38.     During the preliminary injunction hearing, Company claimed that Stephenson stole from Company information in the form of notes made by Stephenson on a number of yellow legal sized tablets ("Yellow Tablets") which Stephenson had used throughout the course of his employment to write down a wide variety of types of information, from personal to business related.

39.     As a result of the evidence presented by Company, the Lawrence County Court entered a preliminary injunction prohibiting Plaintiffs from engaging in any activity whatsoever which competed in any way with the business of Company, thus essentially putting Plaintiffs out of the business of selling carpet-cleaning machines and fluids. The preliminary injunction and opinion which supported it is attached hereto as Exhibit 4.

40.     As a result of the preliminary injunction hearing, the Court made several findings of fact regarding the alleged exploitation by Plaintiffs of information as to which Defendants claimed trade secret status.

41.     For example, based on the information that Defendants claimed that Company was the sole authorized distributor of RotoWash machines and that information concerning the fact that Company was planning to use machines manufactured by another company, the Court found, in findings of fact 18-20, that Peek had improperly used the trade secret information of Company.

42.     In addition, the Court found that Stephenson took from the Company offices hand-written notes which contained customer information, including "full contact information for thousands of Company customers and which he planned to use in a new business." (Finding of Fact 30)

43.     Further, the Court found as a fact that Stephenson used a company laptop computer to which Stephenson, prior to leaving the Company's employ, attached an external hard drive ("Passport") and software to synchronize computer data. (Findings of Fact 33)

44.     The Court found that the Passport was designed to copy all of the information contained on a computer hard drive to the Passport. (Finding 33)

{S0503912.1}

45.     The Court further found that using the Passport, a person could copy to the Passport all of the data in a computer network. (Finding 36)

46.     The Court concluded that Stephenson used the Passport to copy vast amounts of information from the Company computer system, including the "highly sensitive financial and customer information" contained in the Company's Everest and Act databases. (Findings 39 and 40)

47.     The Court also found that Stephenson also copied data from the laptop to a more limited external storage device referred to as the "thumb drive."

48.     Although Peek was never an employee of the Company, had never been in Pennsylvania before or done business in Pennsylvania and had never spoken to Stevenson before the lawsuit was filed, the Court found that Peek had acted as an agent of Stephenson's with the "mutual goal of creating a new business entity that would compete with Whittaker, by utilizing trade secrets and confidential information obtained by Offutt and Stephenson as the result of their prior employment with Whittaker, and, with respect to Stephenson, unlawfully removed from Whittaker's computer system and equipment and documents unlawfully removed from the business premises."

49.     Accordingly, the Court found that it had personal jurisdiction over Peek because of the alleged conspiracy to exploit the alleged trade secrets of the Company even though Peek had done nothing to submit himself to the jurisdiction of the courts of Pennsylvania.

50.     A reading of the opinion reveals that the primary concern of the judge who heard the testimony was the alleged evidence that Stephenson had, using the thumb drive

{S0503912.1}

and an external hard drive, the WD Passport, to download the Everest and other data bases

belonging to Company.

51.    The Court wrote at page 16:

Again, it is not the concept of formulating a competing business that is the center of this controversy; but rather, the taking and utilization of protected information to advance that competition.

52.    The Court wrote further at page 17:

If Defendants are permitted to use the protected and confidential information taken from Whittaker, the nature of the irreparable harm is obvious. The information includes the identities of thousands of Whittaker customers and their specific needs and preferences. If Defendants are allowed to utilize this information in their competing business, they will have the opportunity to interfere with that customer relationship.

53.    The Court continued at page 19:

With respect to Stephenson, although he may suffer the most harm [from the issuance of an injunction], he is the defendant who removed from the business premises of Whittaker the boxes of sensitive information relating to customers, customer contacts and customer preferences, and attached to his Whittaker computer the W.D. Passport device which he accessed several times, a device capable of copying not only the information on the computer, but information on the network to which the computer is attached.

54.    Further, the Court wrote on page 21:

Offutt violated the provisions of the employment agreement by engaging in the creation of a competing business with Peek and disclosing to Peek the highly confidential information that Whittaker was developing a new piece of equipment that would not be manufactured by RotoWash.

55.    Finally, the Court wrote at page 22:

The Court here concludes that the customer lists and customer information of Whittaker is entitled to protection as a trade secret. Whittaker's customers are located throughout North America and other parts of the world. Although it may be true, as Defendants argue, that the identities of its customers may be found in phone books, however, what the Defendants fail to acknowledge is that there is no phone book which would constitute a compilation of all of Whittaker's customers with their preferences and contact information. Nor would there be any way to look in a

phone book and thereby identify the customers of Whittaker. It is the compilation of thousands of customer names with contact information, customer preferences and peculiarized information relative to each customer that makes Whittaker's customer information so valuable to its competitors, together with the sheer volume of information. If Peek, Offut and Stephenson were willing to go to RotoWash with the information relative to Whittaker's anticipated new line of equipment in order to induce it not to deal exclusively with Whittaker, then only one can conclude that Defendants will feel equally at liberty to use customer information retrieved by Stephenson for the same or similar purposes.

An injunction prohibiting the Defendants from engaging in a business in competition with Whittaker is reasonably suited to abate the offending activity.

56.    Plaintiffs appealed the preliminary injunction, which, however, was sustained.

57.    In its opinion, the Superior Court essentially adopted the findings of the trial court. (Exhibit 4, pp. 5-15)

58.    The Superior Court also emphasized the evidence of the alleged taking by Stephenson of the hand-written notes. (*Id.,* pp. 17-20)

59.    The Superior Court adopted the trial court's findings and reasoning regarding the alleged downloading by Stephenson from his laptop to the Passport and the thumb drive of the customer data bases containing the customer lists and customer information which Company claimed was its trade secret information. (*Id.,* pp. 20-21)

60.    Finally, the Superior Court, specifically citing Whittaker's testimony that the information that the Company was planning to sell a new line of machines not manufactured by RotoWash was "not to be known by anyone outside the company," adopted the trial court's findings that Peek used this information to sabotage the Company's relationship to RotoWash. (*Id.,* p. 22)

61.    Following the sustaining of the preliminary injunction by the Superior Court, however, the case came back to the Court of Common Pleas for further proceedings.

62.     During these proceedings, Plaintiffs herein engaged in a number of discovery processes, including depositions of Whittaker, Richard Whittaker, the Company founder, Company employees, the managing employee of Company's fluid manufacturer and the computer experts engaged by Company, and interrogatories and document requests.

63.     Following those proceedings, however, and as a direct result of the information generated during such discovery, the trial Court granted the Motion for Summary Judgment filed by Peek, Offutt, Stephenson and Clear Floor and dismissed all claims made by Company against them. (Exhibit 5 hereto)

64.     The trial Court dismissed the claims against Plaintiffs because, as a result of discovery processes engaged in after the case came back to the trial Court from the Superior Court, the following facts came to light:

A.     The claim of Company that Stephenson downloaded from his laptop the Everest data base to either a thumb drive or Passport hard drive was false because Stephenson, as Whittaker, other Company employees and the testifying expert well knew,  could not access the Everest or Act Data Bases from his laptop;

B.     Even if Stephenson's laptop could have accessed the customer data bases, actual access was prevented by the use by Whittaker of password protection which limited such access to only persons, such as Whittaker, who had the appropriate authority and password, which Stephenson and Offutt did not;

C.     The claim that the formulas for the fluids belonged to Company was false because the fluids were manufactured by a company, Scot Labs, that developed the formulas; Scot never gave the formulas to Whittaker or the

Company and Scot Labs maintained the formulas as its trade secret and confidential business information, which Whittaker knew;

D.     The claim that the yellow tablets contained trade secret information was false, as admitted by the Company corporate designee,  and was not supported in any event by Pennsylvania law;

E.     The claim that the Company's machines were manufactured by RotoWash was a trade secret was false;

F.     The claim that Company was the only authorized distributor of RotoWash was false;

G.     The thumb drive used by Stephenson contained no Company trade secrets allegedly downloaded by Stephenson;

H.     The WD Passport device used by Stephenson contained no trade secret information belonging to the Company;

I.     Information that the Company was planning to sell a carpet-cleaning machine manufactured by a company other than RotoWash was known by others outside of the Company, including customers and was not a trade secret; and

J.     The Company failed to demonstrate that the Plaintiffs had obtained or had used any information that was a trade secret or confidential belonging to the Company.

65.     Moreover, the facts developed in discovery depositions demonstrated that Company and Whittaker knew when they presented evidence at the preliminary injunction hearing of the existence or ownership of a trade secret, that such evidence was false.

66.     Whittaker and others in the employ of the Company knew, at the time of the preliminary injunction hearing that Stephenson was unable to access the Company's Everest and other customer data bases from his laptop computer and so could not have downloaded any customer information from the Everest or Act databases.

67.     Accordingly, Company and Whittaker intentionally presented such false evidence to the Court for the specific purpose to prevent Plaintiffs from engaging in a business that would compete with Company.

68.     Whittaker and Company knew, at the time that they claimed the fluid formulas were Company trade secrets, that the fluid formulas were the trade secrets of Scot Labs.

69.     At the time that Whittaker and Company represented that the identity of the manufacturer of its fluids was a trade secret, Whittaker and Company knew that Scot Labs was well-known in the industry as a manufacturer of encapsulation fluids for use in the carpet-cleaning industry.

70.     As a result of the false testimony and other evidence presented to the trial Court, Plaintiffs were prohibited from engaging in a business competitive to that of Company until May, 2011, when the Court modified the preliminary injunction.

71.     Nevertheless, as a result of the continued claim by Company that the chemical formulas were trade secrets belonging to Company, the Court continued in effect its order that Plaintiffs not sell any fluid with the same formulas as those sold by Company.

72.     Further, because of the false representations by Company and Whittaker, the Court remained under the false impression that the Company was the sole authorized distributor of RotoWash machines.

73.     In fact, every claim by which Company asserted the ownership and possession of a trade secret and the alleged misappropriation and use by Plaintiffs of such trade secrets was a false claim and Company and Whittaker knew that it was false.

74.     Nevertheless, Whittaker arranged for the Company to file the Complaint (Exhibit 1) and the motion (Exhibit 2) without probable cause and for an improper purpose.

75.     As a result of the information developed during proper discovery following the remand of the case from the Superior Court, the trial Court granted summary judgment on all claims asserted. (Exhibit 5 hereto)

76.     The Company did not appeal the ruling of the Court, which thus became final.

77.     Plaintiffs further aver that in addition to filing the complaint (Exhibit 1) and the motion (Exhibit 2), Company and Whittaker sent copies of the preliminary injunction to third parties, including carpet manufacturers and customers, thus representing to the said third parties that Plaintiffs had misappropriated the alleged trade secret information belonging to the Company.

78.     Said false information was provided by Company and Whittaker to third parties that were located in other states like Georgia, which is the location of a number of carpet manufacturers.

79.     The false information provided by the Company and Whittaker to third parties was provided for the purpose of discouraging said parties from dealing with the Plaintiffs.

80.     In addition, Whittaker prevailed upon Scot Labs not to sell to Plaintiff Clear Floor fluids manufactured by Scot Labs.

<u>COUNT I</u>
<u>DRAGONETTI ACT, 42 Pa.C.S. §§ 8351-55</u>
<u>ALL PLAINTIFFS vs. DEFENDANTS</u>

81.     The allegations contained in paragraphs 1 through and including 80 are incorporated herein as if fully set forth.

82.     The conduct of Defendants as aforesaid was in violation of 42 Pa.C.S. §§ 8351-55, the Dragonetti Act.

83.     The Defendants procured, initiated or continued the civil proceedings filed in Lawrence County against Plaintiffs for an improper purpose in violation of the Dragonetti Act.

84.     The proceedings were terminated in Plaintiffs favor when the trial Court granted summary judgment in favor of Plaintiffs.

85.      The Defendants did not have probable cause for the action which they initiated and continued in Lawrence County inasmuch as they knew that they had no trade secrets which Plaintiffs could misappropriate and they knew that Stephenson was unable, through his laptop computer, to download the Everest or Act customer data bases.

86.     The primary purpose for which the Defendants brought the proceedings filed in Lawrence County was not that of securing the proper discovery, joinder of parties or the adjudication of the claims on which the proceedings were based but was for the improper purpose of interfering with the ability of Plaintiffs to compete in the industry of carpet cleaning.

87.      As a result of the filing by Defendants of the Lawrence County lawsuit without probable cause, Plaintiffs were required to expend a large sum of money to engage

{S0503912.1}

the services of counsel, experts and others to defend themselves. The amount spent by Plaintiffs herein was $435,555.11.

88.     Further, Plaintiff Clear Floor suffered a loss of profit as a result of its inability to enter the market in the carpet cleaning industry.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

**COUNT II**
**PENNSYLVANIA UNIFORM TRADE SECRETS ACT,**
**12 Pa.C.S. § 5305 (2013)**
**ALL PLAINTIFFS vs. DEFENDANTS**

89.     The allegations contained in paragraphs 1 through and including 88 above are incorporated herein as if set forth in full.

90.     The conduct of Defendants in filing a frivolous lawsuit falsely claiming that Plaintiffs obtained and used Company's trade secret information was a violation of 12 Pa.C.S. § 5305 (2013), the Pennsylvania Uniform Trade Secrets Act, in that such a filing was undertaken in bad faith and for an improper purpose.

91.     As a result of the filing by Defendants of the Lawrence County lawsuit in bad faith, Plaintiffs were required to expend a large sum of money to engage the services of counsel, experts and others to defend themselves.

92.     Further, Plaintiff Clear Floor suffered a loss of profit as a result of its inability to enter the market in the carpet cleaning industry.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT III
## LANHAM ACT
## ALL PLAINTIFFS vs. DEFENDANTS

93.     The allegations contained in paragraphs 1 through and including 92, above, are incorporated herein as if fully set forth.

94.     Plaintiffs and Defendants at all times relevant conducted business in interstate commerce.

95.      The false information disseminated by Defendants as aforesaid violated the provisions of 15 USCS § 1125, in that the information disseminated by Defendants who, in connection with the goods and services on Plaintiffs used in commerce  words, and false and misleading description of fact and false or misleading representation of fact, which caused mistake and deceived as to the commercial activities of Plaintiffs, and in commercial advertising or promotion, misrepresented the nature, characteristics, and  qualities, of Defendant's and Plaintiff's goods, services,  and commercial activities.

96.     As a consequence of  the  misleading descriptions of fact and false and misleading representations of fact used by Defendants in commerce, Plaintiff suffered financial and competitive damages, including but not limited to legal fees and costs and other damages incurred to correct the false and misleading information disseminated by Defendants.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

**COUNT IV**
**UNFAIR COMPETITION**
**CLEAR FLOOR CARE LLC v DEFENDANTS**

97.     The allegations contained in paragraphs 1 through and including 96 above are incorporated herein as if fully set forth.

98.     The conduct of Defendants as aforesaid in filing against Plaintiffs the lawsuits and motion for preliminary injunction identified above constituted unfair competition under the common law of the Commonwealth of Pennsylvania in that such litigation was initiated only for the improper purpose of preventing Plaintiffs from engaging in proper competition against Company within the industry of carpet cleaning.

99.     As a consequence of the conduct of Defendants aforesaid, Plaintiff Clear Floor suffered financial and competitive damages, including but not limited to legal fees and costs and other damages incurred to correct the false and misleading information disseminated by Defendants.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

**COUNT V**
**ABUSE OF THE LITIGATIVE PROCESS**
**ALL PLAINTIFFS vs. DEFENDANTS**

100.    The allegations contained in paragraphs 1 through and including 99 above are incorporated herein as if fully set forth.

101.    The litigation filed by Company at the instigation of Whittaker was instigated as a sham and constituted an abuse of the litigative process in which Defendants engaged in misrepresentations and falsehoods in the adjudicative process for the purpose of interfering in the business relationships of Plaintiffs.

102.    The litigation filed by Defendants against Plaintiffs herein was objectively unreasonable as it was based on knowingly false representations made to the Court for the sole purpose of preventing Plaintiffs from engaging in proper competition against Company in the carpet cleaning industry.

103.    As a result of the filing by Defendants of the Lawrence County lawsuit in bad faith, Plaintiffs were required to expend a large sum of money to engage the services of counsel, experts and others to defend themselves.

104.    Further, Plaintiff Clear Floor suffered a loss of profit as a result of its inability to enter the market in the carpet cleaning industry.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

<u>COUNT VI</u>
<u>FRAUD</u>
<u>ALL PLAINTIFFS vs. DEFENDANTS</u>

105.    The allegations contained in paragraphs 1 through and including 104 above are incorporated herein as if fully set forth.

106.    Defendants conduct in knowingly providing false information under oath during proceedings before the Court of Common Pleas of Lawrence County constituted fraud.

107.    When Defendants provided said false information, they intended that such information be relied upon by the Court and others.

108.    The Judge before whom such false testimony was given did rely on it to the detriment of Plaintiffs.

109.    As a result of the reliance upon the false information provided under oath by Defendant Whittaker, Plaintiffs suffered serious financial damages, including the payment of legal fees and expenses to defend against the fraudulent claims asserted by Defendants, the loss of revenue

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants in an amount in excess of $75,000, exclusive of interest and costs.

Respectfully submitted,

STANLEY M. STEIN, P.C.

By: /s/ Stanley M. Stein, Esquire
        Stanley M. Stein
        Pa ID # 10577
        445 Ft. Pitt Blvd.
        Suite 150
        Pittsburgh, PA 15219
        412-904-4573 (p)
        412-904-4726 (f)
        smstein@smsteinlaw.com

{S0503912.1}