| | |
|---|---|
| STEPHEN M. PEEK, et al., | ) |
| | ) |
| Plaintiffs, | )   2:13-cv-01188 |
| | ) |
| v. | )   Judge Mark R. Hornak |
| | ) |
| THOMAS WHITTAKER, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

This case is the latest skirmish in the on-going battle between two carpet-cleaning rivals, and is the federal court spill-over of their hotly-contested Pennsylvania state court lawsuit.

Plaintiffs Stephen Peek ("Mr. Peek"), Paul Offutt ("Mr. Offutt"), and Clear Floor Care, LLC ("Clear Floor Care"), a company organized and owned by the individual Plaintiffs, filed this suit against Defendants Thomas Whittaker ("Mr. Whittaker") and R.E. Whittaker Company ("Whittaker Co.")[1], alleging violations of the Dragonetti Act, 42 Pa. Cons. Stat. § 8351 *et seq.*, the Pennsylvania Uniform Trade Secrets Act, 12 Pa Cons. Stat. § 5301 *et seq.* ("PUTSA"), and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as claims for unfair competition, abuse of process, and fraud. Plaintiffs assert that Mr. Whittaker and his company improperly sued them

---

[1] The Court has jurisdiction over this case under 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the amount in controversy is greater than $75,000. For purposes of diversity jurisdiction, the citizenship of a limited liability company ("LLC") such as Clear Floor Care is determined by the citizenship of each of its members, "traced through however many layers of partners or members there may be." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419-20 (3d Cir. 2010). To adequately plead diversity, an LLC plaintiff must include the identity and citizenship of each of its members in the complaint. *See Celestial Cmty. Dev. Corp., Inc. v. City of Phila.*, 901 F.Supp.2d 566, 581-82 (E.D. Pa. 2012). After much jousting on the subject, Plaintiffs filed a declaration at the Court's direction to establish the identity and citizenship of each of the members of Clear Floor Care along with signed declarations from each of its members. ECF No. 26. As both LLC members (Mr. Peek and Mr. Offutt) are citizens of Georgia, and none of the Defendants are Georgia citizens, the Court is satisfied that complete diversity has been properly pled.

in Pennsylvania state court without probable cause, obtained a preliminary injunction ("PI") against their business from that court on the basis of knowingly false testimony and affirmative misrepresentations in and to that court, and then publicized that injunction in the carpet-cleaning world in an effort to further stifle Plaintiffs' ability to compete.

Pending before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 8. The Court has had the benefit of two oral arguments on the Motion. *See* ECF Nos. 13, 25. Having considered those arguments, the Amended Complaint ("AC"), ECF No. 14, the parties' briefs, ECF Nos. 9, 11, Plaintiffs' response, ECF No. 12, the parties' supplemental briefs filed at the Court's request, ECF Nos. 16, 18, and Plaintiffs' reply, ECF No. 20, the Court will grant in part and deny in part the Motion to Dismiss.

## I.     **BACKGROUND**

This protracted litigation campaign has been waged by the parties over more than half a decade with heaping amounts of steadfast resolve. The Court will now briefly recount the tale of the various stages of this multi-jurisdictional clash.[2] For the purposes of the disposition of Defendants' Motion to Dismiss, the essential facts, viewed in the light most favorable to the Plaintiffs, are as follows.

Whittaker Co. sells commercial carpet-cleaning machines and fluids to individuals and businesses. AC ¶ 9. Mr. Whittaker is the chief operating officer and majority shareholder of Whittaker Co. *Id.* ¶ 7. Mr. Offutt was a Whittaker Co. employee from June 21, 2007 to June 21,

---

[2] The case as pled falls within this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). It does not seek to review or call into question the validity of a state-court judgment, so the *Rooker-Feldman* doctrine does not stand in its way. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010) ("When the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent.") Nor, if the facts as pled have legs, is this simply a case of "sour grapes," which Defendants correctly point out is not a viable standalone cause of action in our jurisprudential system. ECF No. 9 at 3. While the conduct of litigation in a state court is at the core of this lawsuit, neither party has pointed to, nor can the Court divine, any prudential, abstention, federalism or comity principle that would counsel this Court's declination of its statutory jurisdiction. *Cf. Farneth v. Wal-Mart Stores, Inc.*, 2013 WL 6859013 (W.D. Pa. Dec. 30, 2013) (jurisdiction declined on comity grounds).

2008, when he was terminated. *Id.* ¶¶ 11, 15. After his termination, Mr. Offutt began discussing the idea of starting a similar carpet-cleaning machine and fluid sales business with Mr. Peek, a Georgia businessman. *Id.* ¶¶ 18, 12. Unbeknownst to Mr. Peek, Mr. Offutt also discussed the prospect of such a business with Paul Stephenson ("Mr. Stephenson"), another former employee of Whittaker Co. who had been terminated. *Id.* ¶¶ 19, 10, 16. In furtherance of his discussions with Mr. Peek and Mr. Stephenson, Mr. Offutt contacted several carpet-cleaning machine manufacturers, including an Austrian company called RotoWash. *Id.* ¶ 20.

On October 22, 2008, Whittaker Co. filed suit against Peek, Stephenson, and Offutt on its home turf in the Court of Common Pleas of Lawrence County, Pennsylvania. *Id.* ¶ 21. That complaint set forth ten (10) causes of action against them.[3] *Id.* ¶ 22. Just about all of the counts involved the central allegation that they were using trade secret information that belonged to Whittaker Co. to start a competing business, while the others stemmed from the alleged violation of restrictive covenants pertaining to Mr. Offutt's and Mr. Stephenson's terms of employment with Whittaker Co. *Id.* ¶ 24; ECF No. 14-4 at 5. Then, on January 13, 2009, Whittaker Co. filed a second Lawrence County lawsuit, this time against Clear Floor Care – an LLC organized and solely owned by Offutt and Peek – related to the same allegations of misappropriation of trade secrets and breach of contracts.[4] *Id.* ¶ 25. Whittaker Co. then filed a petition for a PI seeking to prevent Clear Floor Care and the individual defendants in the original lawsuit from competing in

---

[3] Those causes of action were: breach of contract (against Offutt and Stephenson), breach of fiduciary duty (against Offutt and Stephenson), aiding and abetting breach of fiduciary duty (against Peek), misappropriation of trade secrets (against Offutt, Stephenson, and Peek), tortious interference with contractual relations (against all three), tortious interference with business relationships (against all three), tortious interference with employee relationships (against all three), unjust enrichment (against all three), conversion (against all three), and civil conspiracy (against all three). ECF No. 14-1.

[4] The complaint against Clear Floor Care asserted causes of action for aiding and abetting breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with business relationships, tortious interference with employee relationships, unjust enrichment, conversion, and civil conspiracy. ECF No. 14-2. By the Court's count, this second wave of litigation meant that the state court had to wade through eighteen (18) theories of recovery, against four (4) defendants, all arising from the establishment of exactly one (1) new carpet-cleaning business. This case now piles on six (6) more claims, for an even two dozen.

the carpet-cleaning business. *Id.* ¶ 26. The state court held a multi-day hearing on the petition, during which Whittaker Co. presented testimony from a number of witnesses supporting its claim that the defendants there stole trade secret information from Whittaker Co. and were using it in competition against them. *Id.* ¶¶ 27-28.

One of the witnesses called by Whittaker Co. was a computer expert named John Sloane ("Mr. Sloane"), who represented that he had investigated the allegation that Mr. Stephenson used external data storage devices to copy a confidential customer list from Whittaker Co.'s computer network. *Id.* ¶¶ 29-32; ECF No. 9-1 at 21. Mr. Sloane testified that immediately after Mr. Stephenson was terminated, he (Mr. Stephenson) attached an external hard drive (known as a Passport) and a thumb drive – both of which Mr. Sloane said were capable of downloading from the network all of the information in Whittaker Co.'s customer databases – to his company laptop computer. *Id.* ¶ 30. Whittaker Co. also claimed that Mr. Stephenson stole trade secret information when he took with him a number of legal pads he had used to take notes during his employment with the company. *Id.* ¶ 38.

Whittaker Co. further argued at the hearing that the defendants were attempting to use the chemical formulas for its carpet-cleaning fluids – which Whittaker Co. maintained, along with the identity of the manufacturer of the fluids (Scott Labs), were trade secrets – for their own carpet-cleaning fluids. Id. ¶¶ 34-36. Whittaker Co. professed that the identity of its equipment manufacturer, RotoWash, was also a trade secret, and that it was the only authorized distributor of RotoWash machines in the United States, Canada, and Mexico. *Id.* ¶ 37.

In his PI opinion, Lawrence County Common Pleas Judge Dominick Motto concluded that the defendants "engaged in a conspiracy to unlawfully utilize confidential information and trade secrets obtained while Stephenson and Offutt were employed by [Whittaker Co.] and use

4

this information to the advantage of all defendants by engaging in a business competing with [Whittaker Co.]." ECF No. 14-4 at 27. Judge Motto also decided that the defendants misappropriated trade secrets and other property of Whittaker Co. and unlawfully interfered with Whittaker Co.'s business and contractual relationships, and that Mr. Offutt breached the terms of his employment agreement with Whittaker Co. *Id.* at 27-28. As a result, he entered a PI prohibiting Clear Floor Care and Offutt, Peek, and Stephenson from (1) engaging in any activity that directly or indirectly competed with the business of Whittaker Co., (2) soliciting Whittaker Co.'s customers or employees in any way, and (3) using or disclosing Whittaker Co.'s trade secrets. *Id.* at 2-3. The PI also enjoined Mr. Offutt from violating the non-competition provisions of his employment agreement with Whittaker Co. *Id.*; AC ¶ 39. Plaintiffs appealed the PI to the Pennsylvania Superior Court, which adopted the lower court's findings and affirmed the injunctive order. *Id.* ¶¶ 56-60; ECF No. 9-1.

When the case returned to the Lawrence County court for post-PI proceedings, the parties engaged in a substantial amount of discovery. *Id.* ¶ 61-62. The defendants in that court notably took the depositions of Mr. Whittaker, several other key Whittaker Co. employees, and the computer experts hired by Whittaker Co. *Id.* ¶ 62. On the strength of the record developed by that discovery, the defendants moved for summary judgment. *Id.* ¶ 63. Judge Motto granted the motion and dismissed both of Whittaker Co.'s complaints in their entirety. *Id.* ¶ 64; ECF No. 14-6 at 29.

In his summary judgment Opinion, Judge Motto concluded that there was "no evidence that any defendant obtained a compilation of [Whittaker Co.'s] customers and customer data." ECF No. 14-6 at 15. Judge Motto reached his decision due to an admission by Mr. Whittaker at his deposition (confirmed by Whittaker Co.'s corporate designee at his own deposition) that Mr.

5

Stephenson's laptop did not have access to the databases that contained customer data and could not download or copy information from those databases. *Id.* at 15-16. Additionally, the Passport and thumb drive Mr. Stephenson attached to his laptop contained nothing that could be "considered to be trade secret or confidential." *Id.* at 16.[5] Judge Motto also found no evidence to support Whittaker Co.'s assertion that Mr. Stephenson's note pads contained any customer lists or other protected information. *Id.* at 18.

As to Whittaker Co.'s other claims of trade secret misappropriation, Judge Motto decided that the identity of Scott Labs as Whittaker Co.'s chemical products manufacturer was not a trade secret and was in fact well known, that the formula for the cleaning fluid Whittaker Co. used in its machines belonged to Scott Labs, not Whittaker Co., and that Whittaker Co. did not even know the formula. *Id.* at 18-20. In conclusion, Judge Motto wrote, "[Whittaker Co.] has failed to show the existence of any trade secret misappropriated by any [d]efendant." *Id.* at 22. After it was established that there was no actionable breach of contract or breach of fiduciary duty by Offutt or Stephenson, Judge Motto held the remaining counts of the complaint "must fail once it is determined that there does not exist evidence that any of the [d]efendants misappropriated any trade secrets or confidential information and that there is no evidence of any damages suffered by [p]laintiff as the result of any conduct of the [d]efendants." *Id.* at 26. Judge Motto also observed that "the record presently before the [c]ourt is much different that [sic] the record upon which the [c]ourt relied in issuing its preliminary injunction." *Id.* at 28.

---

[5] Which would be precisely contrary to the content and plain implication of Mr. Sloane's testimony at the PI hearing.

After the grant of summary judgment in their favor by Judge Motto[6], Clear Floor Care, Mr. Peek, and Mr. Offutt filed this action against Whittaker Co. and Mr. Whittaker in this Court. The AC contains the following allegations:

- Defendants filed both complaints and the PI petition "without probable cause and for an improper purpose," knowing that their trade secret misappropriation claims were false. AC ¶¶ 73-74.

- Defendants "knew when they presented evidence at the preliminary injunction hearing of the existence or ownership of a trade secret, that such evidence was false." AC ¶ 65.

- Mr. Whittaker and other Whittaker Co. employees knew that Mr. Stephenson could not access customer databases from his laptop and that the formulas for their fluids and the identity of the manufacturer of those fluids were not their trade secrets when the company made contrary representations at the hearing. *Id.* ¶¶ 66, 68-69.

- Defendants knowingly and intentionally presented this false evidence and testimony to the Lawrence County court to obtain a PI preventing Plaintiffs from starting a business that would have competed with Whittaker Co. *Id.* ¶¶ 67, 73.

- Immediately following the grant of the PI, Defendants sent copies of the PI order – which contained false information – to third-party carpet manufacturers and customers to persuade them not to do business with Plaintiffs. *Id.* ¶¶ 77-79.

- On the basis of the PI, Mr. Whittaker successfully persuaded Scott Labs not to sell cleaning fluids to Clear Floor Care. *Id.* ¶ 80.

Plaintiffs contend that the Defendants' actions establish liability under the Dragonetti Act for initiating civil proceedings with an improper purpose and without probable cause, PUTSA for filing a trade secret misappropriation action in bad faith and for an improper purpose, the Lanham Act for false advertising, and for unfair competition, abuse of process, and fraud.

## II.   DISCUSSION

### A.   Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

[6] It does not appear that any appeal was taken from that Order.

7

550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted only if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

### B.  Dragonetti Act

The Dragonetti Act, which codifies the common law cause of action for malicious use of civil proceedings, establishes liability on a person who "takes part in the procurement, initiation, or continuation of civil proceedings against another" and in doing so "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa. Cons. Stat. § 8351(a), (a)(1). The proceedings in question must have terminated in favor of the person against whom they were brought. *Id.* § 8351(a)(2). Probable cause exists if the person who initiates the action reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. Const. Stat. § 8352.

8

The existence of probable cause does not automatically defeat a Dragonetti Act claim. *Buchleitner v. Perer*, 794 A.2d 366, 377-78 (Pa. Super. Ct. 2002). "The clear language of Section 8351 permits a cause of action to be based on gross negligence or lack of probable cause." *Bannar v. Miller*, 701 A.2d 242, 249 (Pa. Super. Ct. 1997). Once a plaintiff has shown either a lack of probable cause or gross negligence by the defendant, he must also demonstrate that the underlying action was filed primarily for an improper purpose. *Schmidt v. Currie*, 470 F.Supp.2d 477, 480 (E.D. Pa. 2005), *aff'd*, 217 Fed. Appx. 153 (3d Cir. 2007); 42 Pa. Cons. Stat. § 8354(4). Therefore, "a party seeking redress under [Dragonetti] bears a heavy burden." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). A court may decide the existence of probable cause, gross negligence, or improper purpose as a matter of law on a motion to dismiss "when the facts are not in dispute." *Schmidt*, 217 Fed. Appx. at 155; *Higgins*, 281 F.3d at 395-96.

The first Lawrence County complaint asserted causes of action against Mr. Offutt for breach of contract and breach of fiduciary duty as well as claims arising from his alleged role in the misappropriation of trade secrets. The former claims related to the terms of Mr. Offutt's employment contract with Whittaker Co. – namely, a two-year post-employment restrictive covenant and a two-year confidentiality agreement. ECF No. 14-6 at 21. At summary judgment, Judge Motto found no indication that Mr. Offutt breached any fiduciary duty he owed to Whittaker Co. *Id.* at 23. But regarding the breach of contract claim, he wrote, "[t]here is…evidence that clearly shows that Offutt intended to ignore the provisions of the agreement and enter into competition against [p]laintiff. However, the Court enjoined Offutt from doing so before [p]laintiff suffered any damages and before Offutt engaged in any meaningful competition." *Id.* at 21. Because the PI had at that point lasted beyond the two years required by

9

Mr. Offutt's employment agreement, Judge Motto dismissed the breach of contract claim. *Id.* at 21-23.

Since there was plainly some evidence that Mr. Offutt was engaging in behavior potentially violative of his non-compete agreement with Whittaker Co., the Court concludes that the Defendants were neither grossly negligent nor lacking in probable cause in bringing a claim for breach of contract against Mr. Offutt. The AC admits that Mr. Offutt was engaged in conversations with Mr. Peek and Mr. Stephenson about forming a competing company and contacted carpet-cleaning machine manufacturers, including RotoWash, the company from which Whittaker Co. bought its machines. AC ¶¶ 18-20. Judge Motto did not dismiss the breach of contract claim because it lacked merit; he did so because the PI's prohibition on competition had prevented Mr. Offutt from violating the non-compete and at that point had eclipsed the duration for which Mr. Offutt had agreed not to compete. "The issue presented in a Dragonetti Act claim is whether there was probable cause to initiate or continue the underlying suit, and not whether there existed probable cause for each and every claim presented." *Bobrick Corp. v. Santana Prods., Inc.*, 698 F.Supp.2d 479, 494 (M.D. Pa. 2010). Because Defendants had probable cause to bring their breach of contract claim against Mr. Offutt and the AC does not plead that (or how) they were grossly negligent in doing so, the Court will grant Defendants' motion to dismiss the Dragonetti Act claim with respect to Mr. Offutt.

On the other hand, the fact that probable cause existed as to at least one claim against Mr. Offutt does not necessarily extinguish the Dragonetti Act claims of Mr. Peek and Clear Floor Care. *See Buchleitner*, 794 A.2d at 377-78 (allowing a Dragonetti Act claim to proceed where the plaintiff was dismissed from the underlying action on summary judgment but the three other defendants in the case were not). Unlike Mr. Offutt, all of Whittaker Co.'s claims against Mr.

Peek and Clear Floor Care were premised on the allegation that they misappropriated and used Whittaker Co.'s trade secrets and confidential information.[7] Judge Motto dismissed all claims against them "[f]or all of the reasons set forth as to why [p]laintiff cannot sustain at this juncture a cause of action as to...the misappropriation of trade secrets and confidential information." ECF No. 14-6 at 27.

The allegation that Plaintiffs misappropriated trade secrets and confidential information is exactly what the AC contends Defendants lacked any probable cause to rest a legally actionable claim upon. The AC specifically avers that Defendants had no probable cause to bring suit against Plaintiffs because Defendants knew that what they represented to the court to be trade secrets were not, and because Defendants knew Mr. Stephenson could not have even downloaded the customer databases that they stated, through expert testimony at the PI hearing, he stole. Plaintiffs support these allegations with deposition testimony from Mr. Whittaker and Whittaker Co.'s corporate designee admitting the latter, as well as the conclusions of Judge Motto on summary judgment that Defendants presented no evidence of any misappropriation of trade secrets, despite their many allegations of such behavior by Plaintiffs. *See Ciolli v. Iravani*, 625 F.Supp.2d 276, 293-94 (E.D. Pa. 2010). The AC suggests that the reason there was such disparity between Judge Motto's findings in his PI opinion and his conclusions at summary

---

[7] Defendants' supplemental memorandum suggests otherwise, claiming that Mr. Offutt's actions in starting Clear Floor Care with Mr. Peek gave Defendants probable cause for their claims for tortious interference with a contractual relationship against Mr. Peek and Clear Floor Care. ECF No. 15 at 4. However, with the exception of the breach of contract and breach of fiduciary duty claims against Mr. Offutt and Mr. Stephenson, Judge Motto dismissed all of the remaining claims on the grounds that "there is simply no evidence that [d]efendants engaged in any prohibited conduct" related to misappropriation of trade secrets. ECF No. 14-6 at 27. It is plain to the Court from Judge Motto's Opinion that his rationale for dismissing all of the claims against Mr. Peek and Clear Floor Care was the complete lack of evidence that they had stolen or used any trade secrets or confidential information belonging to Whittaker Co. That is enough for the Dragonetti Act claims of Mr. Peek and Clear Floor Care to proceed, at least at this point. Whether they will survive a summary judgment motion, or a trial, may be another matter.

judgment was that Defendants' allegations in the state court complaints and their evidence and testimony at the PI hearing were knowingly false.

The AC also alleges an improper purpose – that Defendants brought the state court lawsuits to obstruct Plaintiffs' ability to establish a competing business.[8] *See Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 74 (1993) (recognizing the suppression of competition as an improper purpose for bringing an antitrust action). Finally, the Lawrence County court proceedings terminated in favor of Plaintiffs on summary judgment.[9] Taking all the facts alleged in the AC as true, the Court concludes that it establishes a plausible basis for a violation of the Dragonetti Act as to Mr. Peek and Clear Floor Care. Therefore, the Court will deny the motion to dismiss the Dragonetti Act claims of those Plaintiffs, but will grant it as to Mr. Offutt.

### C.    Abuse of Process

The common law tort of abuse of process is often confused with malicious prosecution under the Dragonetti Act, but the two are "separate and distinct." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (citing *Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994)). Abuse of process is the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987), *superseded by statute on other grounds*, Dragonetti Act, P.L. 1296, No. 232, § 1, as recognized in *Northwestern Nat'l. Cas. Co. v. Century III Chevrolet, Inc.*, 863 F.Supp. 247 (W.D. Pa. 1999). To state a proper claim for abuse of process under Pennsylvania law, a plaintiff must allege that: (1) the defendant used a legal process against the plaintiff; (2)

---

[8] An improper purpose may also be inferred if the action is filed without probable cause. *Logan v. Salem Baptist Church of Jenkintown*, 2010 WL 3364203, at *8 (E.D. Pa. Aug. 17, 2010).

[9] *See Logan*, 2010 WL 3364203, at *8 ("The focus [for the purpose of the termination of proceedings requirement under the Dragonetti Act] is not on the result of a preliminary ex parte hearing, but the ultimate outcome of the case.")

the action was primarily to accomplish a purpose for which the process was not designed; and (3) harm was caused to the plaintiff. *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).

A claim for abuse of process does not lie where the defendant simply had cruel intentions or "acted from spite or with an ulterior motive." *Cowder*, 644 A.2d at 192 (citing *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 32-33 (Pa. Super. Ct. 1999)). "There must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *Id.* If the defendant simply carries out the process to its conclusion, even with malicious intent, there is no liability for abuse of process. *Id.* (citations omitted).

The Court concludes that in alleging Defendants obtained a PI with knowingly false evidence for the purpose of hampering Plaintiffs' ability to compete in the carpet-cleaning industry, which caused harm to Plaintiffs' reputation and future business prospects, Plaintiffs have made out a valid claim for abuse of process.[10] Courts applying Pennsylvania law have previously recognized a baseless petition for a PI as an actionable abuse of process. *See Levert v. Phila. Int'l Records*, 2005 WL 2789099, at *4-5 (E.D. Pa. Oct. 26, 2005).[11] That is precisely what Plaintiffs aver occurred in state court.

---

[10] While the paragraphs in the AC supporting Count V do not discuss the preliminary injunction but rather the filing of the Lawrence County lawsuits as an "abuse of the litigative process," the claim does contain an incorporation clause at ¶ 100, so the PI allegations elsewhere in the AC are subsumed within that count. The Court notes that it would have been much clearer pleading-wise to fortify the abuse of process claim itself with the proper allegations, but concludes that the factual averments incorporated by reference into that claim are sufficient to clear the *Twombly/Iqbal* bar.

[11] In *Levert*, the plaintiffs moved for summary judgment as to the defendants' counterclaim for abuse of process on the grounds that plaintiffs sought an unfounded PI against the sale of an album of unreleased O'Jays songs. 2005 WL 2789099 at *4. The court in *Levert* concluded that genuine issues of material fact existed as to whether the plaintiffs' primary purpose for seeking the injunction was "not legitimate." *Id.* at *5.

At oral argument, Defendants responded (similar to their contention as to the Dragonetti Act claim) that Judge Motto's summary judgment opinion demonstrated they at least had a legitimate purpose in requesting a PI as to Mr. Offutt – to prevent him from violating the non-compete clause in his employment agreement.[12] However, the test for an abuse of process claim is whether the legal process in question was used "primarily – not exclusively – to achieve a goal unauthorized by the procedure in question." *Id.* (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 (3d Cir. 2003). Because Plaintiffs allege that the primary aim of Defendants' petition for a PI was to foreclose Plaintiffs' ability to establish a foothold in the carpet-cleaning marketplace by dishonest means, a possibly legitimate alternative or secondary purpose is not enough at this juncture to extinguish the abuse of process claim as to any Plaintiff, even Mr. Offutt. Accordingly, the Court will deny the motion to dismiss to the extent that it seeks to dispose of Plaintiffs' claim for abuse of process.

### D.      PUTSA

At Count II of the AC, Plaintiffs levy a claim under Section 5305 of PUTSA. Pursuant to Section 5305, a court may award reasonable attorney's fees, expenses and costs to "the prevailing party" (1) if a claim of misappropriation is made in bad faith; (2) a motion to terminate an injunction is made or resisted in bad faith; or (3) willful and malicious misappropriation exists. 12 Pa. Cons. Stat. § 5305. Plaintiffs contend that in the state court lawsuits, Defendants made bad faith claims for misappropriation of trade secrets, and that they are now entitled to an award of attorney's fees, expenses, and costs under Section 5305 as a result of having to defend those suits.

---

[12] Defendants again attempted to extend that argument to the other Plaintiffs by contending that they also requested a PI to prevent tortious interference with Mr. Offutt's contract by Mr. Peek and Clear Floor Care. The Court is not moved by that argument for the same reasons articulated as to the Dragonetti Act claim, *supra* n. 8.

14

Plaintiffs have not pointed the Court to any case law indicating that Section 5305 creates a standalone cause of action for attorney's fees, expenses, and costs to be recovered in a separate lawsuit, and the Court has not located any such cases in its own research. Instead, courts have routinely considered Section 5305 claims on a motion following either summary judgment or trial in the proceedings where the alleged bad faith conduct occurred.[13] The Court concludes that the language of Section 5305 is plain – it allows a court to award attorney's fees, expenses, and costs to "the prevailing party" on a PUTSA claim in that litigation under the circumstances delineated in subsections (1) through (3). Plaintiffs had an opportunity after the Lawrence County court granted summary judgment to move for such an award under Section 5305[14], and they conceded at oral argument that they did not do so. As they have proffered nothing to this Court showing that they may recover such an award as a separate standalone claim in separate litigation, the Court concludes that Count II does not state a valid claim for relief and will grant the motion to dismiss as to Count II.[15]

**E.    Lanham Act**

The Court next considers Plaintiffs' claim under Section 1125(a) of the Lanham Act. Section 1125(a)(1) provides:

---

[13] *See Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 2014 WL 1364506, at *13 (E.D. Pa. Apr. 7, 2014); *Danois v. i3 Archive Inc.*, 2013 WL 3556083, at *27 (E.D. Pa. July 12, 2013); *Krafft v. Downey*, 68 A.3d 329 (Pa. Super. Ct. 2013); *Hill v. Best Med. Int'l, Inc.*, 2011 WL 6749036 (W.D. Pa. Dec. 22, 2011); *Youtie v. Macy's Retail Holding, Inc.*, 653 F.Supp.2d 612, 630-31 (E.D. Pa. 2009). In *Arora Eng'rs, Inc. v. George*, 2009 WL 6997067 (Pa. Com. Pl. Dec. 1, 2009), the plaintiff's complaint asked for attorney's fees under Section 5305, and the court recognized that PUTSA "does provide for attorney's fees" in denying the defendant's motion to strike that request. However, in that case, plaintiffs made a request for attorney's fees in conjunction with a claim for a violation of PUTSA, and invoked Section 5305(3) – the "willful and malicious misappropriation" language – to request attorney's fees. Here, Plaintiffs make no separate claim of a violation of PUTSA along with their request for attorney's fees under Section 5305(1).

[14] Although the Court notes that the state court complaints, while containing claims for misappropriation of trade secrets, do not reference PUTSA.

[15] This does not foreclose the possibility that certain of the costs and expenses incurred in defending an allegedly baseless lawsuit may be recoverable damages in another asserted claim.

15

Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, service, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Plaintiffs allege that Defendants swiftly sent copies of Judge Motto's PI to their customers and to third party businesses. They claim that because that PI was predicated on Defendants' knowingly false evidence and testimony, Defendants disseminated false and misleading information in commerce about their own products and about Plaintiffs' commercial activities and business dealings, violating Section 1125(a).

The Supreme Court has addressed the scope and application of Section 1125(a):

> The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in...commerce against unfair competition." 15 U.S.C. § 1127. While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks...15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection. As originally enacted, [Section 1125(a)] created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services." (internal citation omitted). [Section 1125(a)] "does not have boundless application as a remedy for unfair trade practices," *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974). "[B]ecause of its inherently limited wording, [Section 1125(a)] can never be a 'federal codification' of the overall law of 'unfair competition'...(internal citation omitted), but can apply only to certain unfair trade practices prohibited by its text.

16

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003). Courts have commonly recognized that Section 1125(a) provides two bases of liability – one under § 1125(a)(1)(A) for "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association')," and the other under § 1125(a)(1)(B) for "false representations in advertising concerning the qualities of goods or services ('false advertising')." *Serbin v. Ziebart Int'l Corp., Inc.*, 11 F.3d 1163, 1173 (3d Cir. 1993) (*quoting Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1098-99 (9th Cir. 1992)). While the AC does not specify which type of claim it is asserting, it is apparent to the Court from the factual averments in the AC (and the absence of any allegations related to wrongful use of a trademark or other device) that Plaintiffs seek relief pursuant to § 1125(a)(1)(B) for false advertising.

To adequately plead a false advertising claim under § 1125(a)(1)(B), a plaintiff must allege the following:

(1) The defendant has made false or misleading statements as to his own product or another's;

(2) There is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

(3) The deception is material in that it is likely to influence purchasing decisions;

(4) The advertised goods traveled in interstate commerce; and

(5) There is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (citing *Warner-Lambert v. Breathasure*, 204 F.3d 87, 91-92 (3d Cir. 2000).

While Plaintiffs' claim may not be a textbook Lanham Act cause of action, the Court has not found, nor been presented with, any case law suggesting that Section 1125(a) contains any

sort of prohibition or limitation that would preclude this false advertising claim. Plaintiffs allege that in the state court complaints and at the PI hearing, Defendants made knowingly false statements about their own products – namely that they and information about their origin and manufacture were trade secrets that Plaintiffs misappropriated to start a competing business. According to the AC, those false statements were the basis for Judge Motto's issuance of a PI against Plaintiffs. Defendants then publicized ("advertised") the PI (which included factual recitations based on allegedly false statements), sending it, as is, to their customers and third party businesses.[16]

Plaintiffs contend that Defendants took that action, premised on the PI and cloaked with apparent judicial imprimatur, with the intent to deceive Plaintiffs' prospective customers and business partners (including RotoWash), that the false statements contained in the Order did then deceive the recipients and influenced their purchasing decisions, and that Defendants' actions irreparably hurt Plaintiffs' fledgling business and cost them customers and a substantial amount of good will as they expended resources to correct the false information Defendants had spread. The Court is cognizant of the Supreme Court's admonition that Section 1125(a) does not have "boundless application," but concludes that Plaintiffs' false advertising claim plausibly states a cause of action for the type of unfair trade practice contemplated by the text of the statute.[17] Therefore, the Court will deny the motion to dismiss as to the Lanham Act count.[18]

---

[16] In their supplemental memorandum, Plaintiffs argue that by disseminating the preliminary injunction to such entities, Defendants waived any applicable state law litigation privilege which would bar a claim grounded on statements made in connection with the initiation and prosecution of a lawsuit. As that issue was not raised in Defendants' Motion to Dismiss, the Court need not address it here.

[17] Plaintiffs cite to *Encompass Ins. Co. of Mass. v. Giampa*, 522 F.Supp.2d 300 (D. Mass. 2007), as an analogy to the Lanham Act claim in this case. In *Giampa*, the defendants asserted a § 1125(a)(1)(B) counterclaim for false advertising on the premise that the plaintiff filed a complaint against them without a good faith basis for doing so and then repeated false and misleading allegations from the complaint, as well as other falsehoods, in a press release about the suit that it issued. 522 F.Supp.2d at 306-07, 310. While the *Giampa* court dismissed the Lanham Act claim because of its failure to allege that defendants competed with plaintiff or had suffered a competitive injury as a

18

## F.    Unfair Competition

At Pennsylvania common law, unfair competition is customarily defined as "the 'passing

off' of a rival's goods as one's own." *Giordano v. Claudio*, 714 F.Supp.2d 508, 521 (E.D. Pa.

2010) (citing *Scanvec Amiable Ltd. v. Chang*, 80 Fed. Appx. 171, 180 (3d Cir. 2003)). However,

unfair competition is not limited to that definition. *Carl A. Colteryahn Dairy, Inc. v. Schneider

Dairy*, 203 A.2d 469, 473 (Pa. 1964). Instead, "Pennsylvania courts have recognized a cause of

action for the common law tort of unfair competition where there is evidence of, among other

things, trademark, trade name, and patent rights infringement, misrepresentation, tortious

interference with contract, improper inducement of another's employees, and unlawful use of

confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, 2005 WL 2233441, at *8 (E.D.

Pa. Sept. 14, 2005) (citations omitted). "The phrase contextually is limited to claims designed to

protect a business from another's misappropriation of its business organization or its expenditure

of labor, skill, or money, *i.e.*, injury to reputation, product, manner of doing business,

identification and so forth." *USX Corp. v. Adriatic Ins. Co.*, 99 F.Supp.2d 593, 620 (W.D. Pa.

2000) (citing *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 320 (3d Cir.

---

result of plaintiff's actions, Plaintiffs in this case argue that "it is clear that the court would not have done so if the counterclaimants would have been able to allege that they were competitors of the party that issued the press release." ECF No. 18 at 5. The Court is somewhat unconvinced of the clarity of that presumption, but it is worth noting that the allegations in this case – that Defendants lied to a court and disseminated an order from that court, carrying the seal and authority of that court and containing findings of fact and conclusions of law based largely on allegedly false statements – are far different, more precise, and far more serious than those in *Giampa*.

[18] The Court has conducted a searching review of the AC and found no specific averment that the goods Whittaker Co. allegedly made false representations about traveled in interstate commerce, as required by the fourth prong of the Third Circuit test for a false advertising claim under 15 U.S.C. § 1125(a)(1)(B), cited *supra*, p. 17. That said, the plain implication of Whittaker's assertions in the PI proceeding regarding the heritage of its chemical products and Austrian-produced carpet-cleaning devices likely fulfill this requirement. Just to be sure, within ten (10) days of the issuance of this Opinion, Plaintiffs shall file a declaration with the Court setting forth the factual basis for concluding (if at all) that such goods have traveled in interstate commerce. The Court will assess the sufficiency of that declaration, and if it concludes that the declaration does not adequately and plausibly assert that such goods traveled in interstate commerce, it will then dismiss the Lanham Act claim.

1995)). Unfair competition may not be used as "a virtual catch-all for any form of wrongful business conduct." *Id.* at 619.

The Pennsylvania cause of action for unfair competition is also "coextensive" with the definition of unfair competition contained in the Restatement (Third) of Unfair Competition. *Giordano*, 714 F.Supp.2d at 521-22 (citations omitted). Section 2 of the Restatement describes the general principle of "Deceptive Marketing," which is included in the Third Restatement's definition:

> One who, in connection with the marketing of goods or services, makes a representation relating to the actor's own goods, services, or commercial activities that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another...is subject to liability to the other...

Restatement (Third) of Unfair Competition § 2 (1995). This language is nearly identical to that contained in Section 1125(a) of the Lanham Act, and the comments to Section 2 continually cite that federal statutory provision as a basis for the definition and parameters of deceptive marketing. *Id.* cmts. b, c, f. As stated above, Pennsylvania courts have included "misrepresentation" and resulting injury to "reputation" and "manner of doing business" in the definition of unfair competition. Plaintiffs allege just such a course of conduct and consequent injury to them in the AC. Additionally, Plaintiffs have adequately stated a claim under Section 1125(a) of the Lanham Act, which appears to be a near analog to the Third Restatement's definition of deceptive marketing. On that basis, the Court concludes that Plaintiffs have stated a plausible claim for unfair competition and will deny the motion to dismiss as to Count IV.

### G. Fraud

To establish a claim for fraud or intentional misrepresentation, Plaintiffs must adequately plead the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or

20

false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (citations omitted). The Federal Rules of Civil Procedure implement a heightened pleading requirement for fraud – Plaintiffs must state with particularity the circumstances constituting the fraud, but may allege generally conditions of the mind such as malice, intent, and knowledge. Fed. R. Civ. P. 9(b).

The fraud claim contained in the AC comes to court with significant flaws. Nowhere does the AC aver that Plaintiffs themselves were the recipients of Defendants' alleged misrepresentations in the state court complaints or at the PI hearing. Nor does it state that Plaintiffs relied, justifiably or not, on any of those alleged misrepresentations. Instead, according to the AC, Defendants "intended that such information be relied upon by the Court and others" – presumably the customers and other businesses Defendant sent the PI to – and "[t]he [j]udge before whom such false testimony was given did rely on it to the detriment of Plaintiffs." AC ¶¶ 107-08.

To sufficiently plead a claim of fraud, a plaintiff must assert that he was the recipient of the misrepresentation, reasonably relied on that misrepresentation, and was damaged as a proximate result of his reliance. *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 167 (Pa. Super. Ct. 2013). As one Pennsylvania court has noted, "It is the fundamental principal [sic] of the law of fraud, regardless of the form of the relief sought, that in order to secure redress, the representee must have relied upon the statement or representation as an inducement to his action or injurious change of position." *Silverman v. Bell Sav. & Loan Ass'n.*, 533 A.2d 110, 114 (Pa. Super. Ct. 1987) (*quoting* 37 Am. Jur.2d Fraud & Deceit § 23 (1968)). Under the facts as alleged by Plaintiffs, they neither received misrepresentations from Defendants nor relied upon them in any

way. Therefore, they have not stated a plausible claim for fraud. *See Joyce*, 74 A.3d at 167 (dismissing a fraud claim where the plaintiff failed to allege that the defendant made any misrepresentation to him, or that he relied on any such misrepresentation, but instead claimed that the defendant deceived the federal government, a federal jury, and a federal court in a criminal case against him). The Court will grant the motion to dismiss the fraud count.

## III.    CONCLUSION

According to the Plaintiffs' allegations, throughout the underlying state court proceedings, honesty was a lonely word.[19]   Based on them, Counts I, III, IV and V of the Amended Complaint may proceed to the next stages of litigation, and for the reasons stated in this Opinion, the Motion to Dismiss is granted in part and denied in part as follows:

1) As to the Dragonetti Act claim (Count I), the Court grants the Motion to the extent that Mr. Offutt's claim is dismissed and denies the Motion in all other respects;

2) The Court grants the Motion as to the PUTSA claim (Count II);

3) The Court denies the Motion as to the Lanham Act claim (Count III);

4) The Court denies the Motion as to the claim for unfair competition (Count IV);

5) The Court denies the Motion as to the claim for abuse of process (Count V); and

6) The Court grants the Motion as to the claim for fraud (Count VI).

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: May 2014
cc:    All counsel of record

---

[19] WILLIAM MARTIN JOEL, *Honesty, on* 52ND STREET (Columbia Records 1978).

22