IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEPHEN M. PEEK, *et al.*, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:13-cv-1188 |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| THOMAS WHITTAKER, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Litigation between these floor care business competitors has been ongoing for nearly a decade, and has culminated in this federal lawsuit which has at its core a state court lawsuit. As explained below, the Court concludes that the record contains no genuine issue of material fact relevant to the arguments made in the Defendants' Motion for Summary Judgment, and that Defendants Whittaker *et al.*[1] are entitled to such judgment in their favor as a matter of law. The Defendants' Motion, ECF No. 66, will be granted.

### I. FACTS & PROCEDURAL HISTORY

The facts central to the case were set out at length in this Court's previous Opinion. ECF No. 27. Because this is a Motion for Summary Judgment, an abridged version taken from the parties' Statements of Material Facts Not in Dispute (and the responses thereto), ECF Nos. 69, 71, 74, is provided below.

The federal court chapter in this carpet care saga begins in 2008 when Whittaker sued Stephen M. Peek, Paul Offutt, and Paul Stephenson in the Court of Common Pleas of Lawrence County, Pennsylvania. But, the story started well before that.

---

[1] For ease of reference, the Court will refer to the Plaintiffs generally as "Peek" and the Defendants as "Whittaker."

Whittaker was in the business of selling carpet cleaning machines and fluids to other businesses that needed to clean their carpets. ECF No. 69, at 1. Whittaker's Director of Sales was Paul Offutt, who worked under a contract that included a non-compete provision prohibiting Offutt from, among other things, "directly or indirectly engag[ing] in any business which competes with Whittaker's business." *Id.* at 2. Offutt was once related to Stephen M. Peek by way of two marriages (one of which now appears to have been dissolved). Peek was in the auto body business—not the carpet cleaning business. *Id.* The woven web began to tangle when Whittaker told Offutt that his (Offutt's) contract would not be renewed upon its expiration in June 2008.

When Peek learned Offutt was not going to be renewed he said to Offutt "The hell with them. Why don't you look into doing something with me? Let's do something together." *Id.* at 6. From there, the two created Clear Floor Care, LLC. *Id.* at 5. In starting the new venture, Peek was in contact with Gregor Morokutti, a representative of Rotowash (the company that manufactures Whittaker's carpet cleaning equipment) in Austria. *Id.* at 8. Meanwhile, Stephenson—still a Whittaker employee—and Offutt were in regular contact, with Stephenson providing Offutt with various information like contacts at Rotowash and Scot Labs (the supplier of Whittaker's carpet cleaning fluids), confirmation of Stephenson's own desire to join the new business, and a "myriad of other things that [they] were looking into to decide whether we were going to do something." *Id.* at 7–10.

The plot further thickened when Stephenson let slip to some of his Whittaker colleagues that he was leaving Whittaker to go into a competing business. *Id.* at 13. Stephenson was soon terminated from employment. *Id.* Before departing for good, Stephenson—who was a long-time prolific note-taker at and about work at Whittaker—removed several boxes from the office

containing a slew of note pads on which he had copiously documented various activities he performed as a Whittaker employee, as well as related customer information. *Id.* at 14. Stephenson also connected to his Whittaker work computer a device capable of downloading and storing large amounts of data. *Id.* Whittaker got wind of this, and sued in state court to nip this new venture in the bud.

Whittaker obtained a preliminary injunction which enjoined the state court defendants (Peek, Offutt, and Stephenson) from directly or indirectly engaging in any business that competed with Whittaker, soliciting current, former, or prospective customers of Whittaker, soliciting employees of Whittaker, or using any of Whittaker's trade secrets. *Id.* at 18. Several years later in April 2013, after extended discovery, and after the non-compete provision in Offutt's contract had timed out, the state court went in the other direction and granted summary judgment to Peek *et al.*, concluding that Whittaker was unable to prove its claims that the state court defendants had actually taken or used any trade secrets. *Id.* at 19.

Shortly thereafter, in August 2013, Peek filed this federal suit. ECF No. 1. Essentially, Peek's claims here amount to a federal court tit for Whittaker's state court tat. He argues that the state court lawsuit was baseless, and that Whittaker knew as much from Day One. Peek says that the state court suit was only filed to stifle the new business venture (which it says is an improper use of the litigation process) and advances several legal theories here to support that view. Following briefing and argument on Whittaker's Motion to Dismiss, ECF No. 8, the Court issued an Opinion and Order granting in part and denying in part that Motion. ECF Nos. 27, 28. Whittaker filed an Answer to the Amended Complaint and the parties then engaged in extensive discovery. Whittaker then filed this Motion for Summary Judgment and the parties briefed and orally argued it too. ECF Nos. 66, 67, 72, 75, 79. The matter is ripe for disposition.

3

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted if the movant can show that there is no genuine issue of material fact and that that party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 317 (3d Cir. 2014). "Importantly, the nonmoving party cannot satisfy its requirement of establishing a genuine dispute of fact merely by pointing to unsupported allegations found in the pleadings." *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 925 (3d Cir. 2011). Rather, the nonmoving party must raise more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and the Court must determine whether "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In considering a motion for summary judgment, the Court must view all evidence and draw all reasonable inferences in favor of the non-moving party. *See Matushita*, 475 U.S. at 587. Here, that's Peek *et al.*

## III. DISCUSSION

The Court will first discuss the Dragonetti Act claim at Count I followed by the abuse of process claim at Count V, the unfair competition claim at Count IV, and the Lanham Act claim at Count III.[2]

---

[2] Counts II and VI were previously dismissed by Order of this Court. ECF No. 28.

### a. Dragonetti Act (Count I)[3]

The Dragonetti Act makes liable a person who "takes part in the procurement, initiation, or continuation of civil proceedings against another," and in so doing "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa. Stat. § 8351(a).

So, to prevail on a Dragonetti Act claim, the Plaintiff must prove, among other things, that the Defendant lacked probable cause to bring the civil proceedings against the Plaintiff, or that the Defendant was grossly negligent in bringing the action. 42 Pa. Stat. § 8354. Probable cause exists if the party "reasonably believes in the existence of the facts upon which the claim is based" and "reasonably believes that under those facts the claim may be valid under the existing or developing law." 42 Pa. Stat. § 8352(1). A party is grossly negligent, on the other hand, if the action is brought with "the want of even scant care." *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 704 (Pa. Super. 2003).

If the Plaintiff is able to establish either a lack of probable cause or gross negligence on the part of the Defendant, he must then also show that the underlying action was brought primarily for an improper purpose. 42 Pa. Stat. § 8354(4); *Fisher v. Exley*, No. 1170-EDA-2014, 2015 WL 7573352, at *7 (Pa. Super. Jan. 16, 2015).

Dragonetti Act plaintiffs bear "a heavy burden," *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002), because they must prove lack of probable cause or gross

---

[3] Count I of this suit is brought by "All Plaintiffs vs. Defendants." ECF No. 14, at 14. One of the Plaintiffs here is Clear Floor Care, LLC. Clear Floor Care, LLC, however, does not have standing to bring this claim because it was not a party in the underlying state court action. *See Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 193 (Pa. Super. 1993) ("an action under 42 Pa. C.S. § 8351 cannot be maintained by one who was not a party to the underlying action.") (citing *Lessard v. Jersey Shore State Bank*, 702 F. Supp. 96, 98 (M.D. Pa. 1988) ("The plaintiff . . . was not a party to the underlying state court action. Thus, she lacks the requisite standing and cannot set forth a cause of action under 42 Pa. C.S.A. § 8351.")). Therefore, Count I as brought by Clear Floor Care, LLC will be dismissed for lack of standing.

5

negligence, *and* an improper purpose as to each and every claim in the underlying action. *Bobrick Corp. v. Santana Prods., Inc.*, 698 F. Supp. 2d 479, 494 (M.D. Pa. 2010) ("The issue presented in a Dragonetti Act claim is whether there was probable cause to initiate or continue the underlying suit, and not whether there existed probable cause for each and every claim presented."). The converse, of course, is that the existence of probable cause or proper purpose for but a single claim in the underlying action will defeat a subsequent Dragonetti Act action. *See id.*

Here, Whittaker argues that as a matter of law, they had probable cause to believe (and then file suit) (1) that Peek intentionally interfered with Offutt's contract with Whittaker, (2) that Peek and Offutt formed Clear Floor Care, LLC in violation of Offutt's non-compete agreement, and (3) that the state court defendants (including Peek and Offutt) took and used Whittaker Company's confidential information. ECF No. 67, at 11–15. Whittaker further argues that they did not bring the suit for an improper purpose. *Id.* at 15. Peek counters by arguing that a jury "could find" that (a) Whittaker knew the information it claimed to be "trade secrets" was not such, or (b) Whittaker had no evidence that Plaintiffs misappropriated any trade secrets, or (c) Whittaker was grossly negligent in bringing the state court suit. ECF No. 72, at 9.

In the underlying state court action, Whittaker brought ten (10) counts. ECF No. 14-3, at 13–29. Relevant to what is left of this federal case are state court Counts III (Aiding and Abetting Breach of Fiduciary Duty), IV (Misappropriation of Trade Secrets), V (Tortious Interference with Contractual Relations), VI (Tortious Interference with Business Relationships), VII (Tortious Interference with Employee Relationships), VIII (Unjust Enrichment), IX (Conversion), and X (Civil Conspiracy).[4] *See id.* The Plaintiffs here in federal court must prove that Whittaker lacked probable cause for each and every one of those state court counts, or

---

[4] Counts I and II were against Offutt and Stephenson, Count III was against Peek, Count IV-X were against all three.

6

alternatively was grossly negligent in bringing every single one of them. *See Bobrick*, 698 F. Supp. 2d at 494, and then had no proper purpose for suing in state court.

On the Tortious Interference with Contractual Relations count in state court, Whittaker had to prove (1) the existence of a contractual relationship, (2) intent by Peek to harm Whittaker by interfering with that contractual relationship, (3) the absence of privilege or justification for the interference, and (4) resulting damages. *See Triffin v. Janssen*, 626 A.2d 571, 574 (Pa. Super. 1993). And on the undisputed facts in the record here in federal court, here is what Whittaker knew (at least) when the state court suit was filed: First, Offutt had a non-compete agreement with Whittaker. ECF No. 69, at 2–5 ¶¶9–11. Second, Peek sought to (and indeed, actually did) go into the carpet cleaning business with Offutt. *Id.* at 5 ¶12, 6–7 ¶¶13, 16–23. Third, Peek was in contact with Rotowash (Whittaker's primary supplier) and seeking to purchase carpet-cleaning equipment "similar to R.E. Whittaker's" for the new venture. *Id.* at 8–10 ¶¶28–31.

Peek's arguments in this Court are largely a rehashing of the merits of the underlying state court claims. *See* ECF No. 72, at 9–30 (arguing about what was, and was not, "really" trade secret information and whether Whittaker knew as much).[5] Those arguments appear to have worked in state court (after all, Peek ultimately won there), but they are beside the point here. What matters for the purposes of evaluating the Dragonetti Act claim was whether Whittaker had probable cause to bring the suit at all, not whether Whittaker was, or should have been, victorious. *See* 42 Pa. Stat. § 8354.

---

[5] For the first "prong" of the Dragonetti Act analysis, it is irrelevant whether any of the information Whittaker asserted in state court was a trade secret or was not a trade secret. For this claim, the Court must only evaluate whether there was probable cause to bring at least one of the claims in the underlying action. *Bobrick*, 698 F. Supp. 2d at 494. The Court concludes that independent of whether there was any "trade secret" level information at issue (or whether Whittaker falsely asserted that there was), there is an independent basis for finding probable cause on the Tortious Interference with Contractual Relations claim, namely that Peek was interfering with the non-compete agreement between Offutt and Whittaker.

7

Imagine standing in Whittaker's shoes in October 2008. Whittaker knows that a former employee (Offutt)—one with a facially valid non-compete agreement—enters into a business arrangement with Stephen Peek, in the very same line of business as Whittaker. And Peek, while starting that new business venture, is in contact with Whittaker's main supplier of the equipment necessary to do the work. Meanwhile, a current Whittaker employee, Stephenson, is talking openly about joining the new business and had contemporaneously removed several boxes of his copious business notes from the Whittaker offices. Whittaker then contemplates suing. In the Court's view, bringing a Tortious Interference with Contract claim was eminently reasonable (and legally and factually supported) as a matter of law. The facts as to at least that much are undisputed as to what happened and when Whittaker knew about it. The Court concludes that it was reasonable as a matter of law for Whittaker to believe that it had a valid claim for tortious interference with its contractual relations with Offutt. Whittaker knew about its non-compete agreement with Offutt, knew that the employee bound by that agreement had entered into a competing business (likely in stark and direct violation of that agreement), and believed that his (Whittaker's) business would be harmed by having to compete against that new entity (who had access to Whittaker's business records via Stephenson) in the rough and tumble of the carpet cleaning marketplace. The Court concludes that Whittaker had probable cause to bring the Tortious Interference with Contractual Relations claim as a matter of law.

Concluding that Whittaker had probable cause for that claim is the end of the matter on this prong of the Dragonetti Act analysis. *See Bobrick*, 698 F. Supp. 2d at 494 (probable cause for one claim justifies bringing the entire lawsuit). That is not the end of the story, however, as Peek also argues here that Whittaker was nonetheless grossly negligent in bringing the suit. ECF No. 72, at 9; 42 Pa. Stat. § 8354. The basis of this argument appears to be the fact that Peek won

below when the state court ultimately found that the purported Whittaker trade secret information was actually not protected by state law as "trade secrets." ECF No. 72. Peek asserts that when Whittaker filed the state court lawsuit, it knew the following: (1) Stephenson could not actually access the Everest or Act databases (Whittaker's main computer information systems that included things like customer information) on his laptop; (2) Stephenson's notetaking yellow pads contained no trade secret information; (3) Whittaker's list of "customer special needs" was not trade secret information; (4) the identity of Whittaker's chemical products manufacturer was not trade secret information; (5) the formulas of Whittaker's chemical products were not trade secret information; (6) Whittaker was not the exclusive importer and distributor of Rotowash machines; and (7) Whittaker's plan to sell non-Rotowash machines was not a trade secret. *Id.* at 10–30. And because Whittaker knew all that, Peek now says, Whittaker filed the state court lawsuit for "want of even scant care." *See Ratti*, 758 A.2d at 704.

Evaluating the evidence in the light most favorable to the nonmoving party, as the Court must, *see Matushita*, 475 U.S. at 587, those assertions are all fine, well, and good (and perhaps even supported by the undisputed facts). But even accepting them all as true does not lead the Court to conclude that a jury could rationally conclude that Whittaker was grossly negligent in bringing the state court case. As explained above, at the least, Whittaker knew its former employee was bound by a non-compete agreement, and was induced to enter a competing business by Peek (who also tried to poach Whittaker's main equipment supplier), all with the help of Stephenson and his cache of detailed business notes. Given what was plainly before Whittaker, the Court concludes as a matter of law that Whittaker was not "grossly negligent" in

bringing the state court lawsuit to vindicate what it reasonably believed was a violation of its contractually-secured rights.[6] That is not grossly negligent behavior.

In sum, there is no genuine issue of material fact on the Dragonetti Act claim and the Court concludes that Whittaker is entitled to judgment as a matter of law. A rational jury could not return a verdict in Peek's favor based on the undisputed record facts in this case. *See Anderson*, 477 U.S. at 252. Therefore, Whittaker's Motion will be granted as to Count I.

### b. Abuse of Process (Count V)

Abuse of process is similar to a Dragonetti Act claim, but is legally distinct. To prevail on an abuse of process claim, the Plaintiff must prove that the Defendant (1) used a legal process; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm to the Plaintiff resulted. *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993). Even bringing a valid cause of action could subject a party to a subsequent abuse of process claim if the legal process is used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987); *see also Weiss v. Equibank*, 460 A.2d 271, 276 (Pa. Super. 1993) (if a plaintiff sues "not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process."). However, if a party is merely pursuing the legal process to its authorized conclusion, even though it had bad intentions, no action for abuse of process will lie. *Hart v. O'Malley*, 647 A.2d 542, 552 (Pa. Super. 1994) (collecting cases).

Peek says that the underlying state court litigation "was instigated as a sham and constituted an abuse of the litigative process in which [Whittaker] engaged in misrepresentations

---

[6] Remember that "gross negligence" for these purposes is defined as "the want of even scant care." *Ratti*, 758 A.2d at 704. Based on the information it had, Whittaker easily surpassed that standard in bringing the state court lawsuit. In the alternative, the Court concludes that bringing the suit for this purpose is not improper under the Dragonetti Act. Winning is not a prerequisite for filing suit and losing is not revealing of improper purpose. There are no facts that would lead the Court to conclude that a rational jury could permissibly conclude otherwise.

10

and falsehoods in the adjudicative process for the purpose of interfering in the business relationships of [Peek *et al.*]." ECF No. 14, at 17–18 ¶101. Whittaker says that Peek can't even prove that the testimony presented to the state court at the preliminary injunction stage was false, let alone prove that it was willfully false or that Whittaker abused legal process. ECF No. 67, at 15–17.

Again the parties spend many pages re-litigating the merits of the underling action. *See* ECF Nos. 67, at 17–29; 72, at 9–30. And again, that is beside the point.

Accepting Peek's side of the story as true (*i.e.*, Whittaker knew that Stephenson could not actually access the Whittaker business databases on his laptop and Whittaker knew that nothing it was worried about was a true "trade secret"), the question becomes whether Whittaker filed the state court lawsuit "primarily to accomplish a purpose for which the process was not designed." *See Rosen*, 627 A.2d at 192. The Court concludes that a jury could not find that it was. Here's why.

Peek contends that the improper purpose was preventing Peek, Stephenson, and Clear Floor Care, LLC from starting and operating a competing business. ECF No. 72, at 3 (citing cases finding interference with business competition to be an improper purpose). As explained above, however, Whittaker had probable cause to bring the state court lawsuit and to vindicate its rights under its employment contract with Offutt, a contract by which Offutt promised not to engage in a competing business. By suing in state court, Whittaker sought to prevent, or stop, Peek's alleged interference with that contract. Vindicating contractual rights is a legitimate use of legal process. That a corollary effect of the lawsuit was to prevent Clear Floor Care, LLC from operating does not transform Whittaker's motives into illegitimate ones. *See Hart*, 647 A.2d at 552 (collecting cases).

11

Even if any incidental motive was to dampen competition by Clear Floor Care, LLC, more is required for an abuse of process claim. *See id.* There is no record evidence from which a jury could conclude that the state court lawsuit was initiated for the *primary* purpose of suffocating competition (even if everything Peek says is true and all inferences are drawn in his favor). *See Levert v. Phila. Int'l Records*, No. 04-1489, 2005 WL 2789099, at *4–5 (E.D. Pa. Oct. 26, 2005) (the test for abuse of process is whether the legal process was used "primarily—not exclusively—to achieve a goal unauthorized by the procedure in question.") (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307 (3d Cir. 2003)). The undisputed record evidence shows that Whittaker knew its former employee was starting up a competing business in violation of his non-compete agreement and Whittaker knew that there was plenty of company business information that had been taken and would be provided to that new business. Even though Whittaker did not prevail at the merits stage of the state court case,[7] suing in the first place to enforce and prevent interference with a valid contract was not an abuse of legal process. Therefore, Whittaker will be granted summary judgment on Count V.

### c. Unfair Competition (Count IV)

Peek's unfair competition claim is derivative of its Dragonetti Act and abuse of process claims. *See* ECF No. 14, at 17 ¶98 ("the lawsuits and motion for preliminary injunction . . . constituted unfair competition . . . in that such litigation was initiated only for the improper purpose of preventing [Peek] from engaging in proper competition again [Whittaker]."); ECF No. 72, at 30–31 (indicating that this claim is brought under the "catch-all" or "residual" category of the Restatement (Third) of Unfair Competition because it is based on the institution of "groundless litigation against a competitor"). Having concluded that a jury could not find that

---

[7] The state court did *not* find that Peek's non-compete agreement was invalid. Its blackout period had expired by the time the state court entered its final ruling. ECF No. 14-6, at 21–22. No one challenges its validity here.

12

Whittaker filed the state court lawsuit or motion for preliminary injunction primarily for an improper purpose, *see* sections III.a and III.b above, the Court concludes that there is no basis for a jury to conclude that Whittaker engaged in unfair competition by filing it. As such, Whittaker will be granted summary judgment on this Count also.[8]

### d. Lanham Act (Count III)

Under the Lanham Act, Peek must prove (1) Whittaker has made false or misleading statements as to his own product or another's; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to Peek in terms of declining sales, loss of good will, etc. *See Penrod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241, 248 (3d Cir. 2011). The false advertising or promotion prohibited by the Act must be (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" with the industry. *Caldon, Inc. v. Advanced Measurement & Analysis Grp., Inc.*, 515 F. Supp. 2d 565, 578 (W.D. Pa. 2007) (citing *Seven Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 2007)).

Whittaker contends that Peek can't sustain its burden under the Lanham Act and that the claim is barred by the statute of limitations anyway. ECF No. 67, at 29. Peek disagrees. ECF No. 72, at 33–35.

The dispute centers on whether or not Whittaker sufficiently disseminated the fact of the state court preliminary injunction to constitute advertising or promotion within the industry. The undisputed record evidence shows that the preliminary injunction order was sent by Whittaker to

---

[8] The Court does not reach the parties' arguments about the statute of limitations as to this Count.

13

three individuals who worked for two companies (Tandus and Shaw Carpet). ECF Nos. 69, at 34 ¶ 126; 71, at 17 ¶126. Those two companies are "carpet mills" who are not customers of Whittaker nor potential customers of Clear Floor Care, LLC, *id.*, but they do appear to make carpet cleaning and maintenance recommendations to their customers, ECF No. 72, at 34. Peek says dissemination to these three people at these two companies is enough; Whittaker says it is not.

First, it is helpful to define exactly who the relevant purchasing public is. "The relevant purchasing public [] is determined by identifying plaintiff's clients or potential clients." *Premier Comp Solutions, LLC v. Penn Nat. Ins. Co.*, No. 07-1764, 2012 WL 1038818, at *9 (W.D. Pa. Mar. 28, 2012). Here, Peek's clients or potential clients are organizations in need of carpet cleaning equipment (Whittaker gives examples like hotels, convention centers, and personal care facilities). The record does not show that a *single* customer or potential customer of Peek received a copy of the preliminary injunction order. ECF Nos. 67, at 32 ¶125; 71, at 17 ¶125. Indeed the three individuals at two companies who were given a copy of the injunction order were *not* customers or potential customers of Peek. ECF Nos. 67, at 34 ¶127; 71, at 17 ¶127.[9] Therefore, the Court concludes that the charged action of Whittaker in disseminating the preliminary injunction order as it did was not directed to the relevant purchasing public, and as such Peek's Lanham Act claim fails as a matter of law.

In the alternative, the Court concludes that Peek cannot carry its burden as to the second element of its Lanham Act claim either. The fact that the preliminary injunction order existed was literally true. Therefore, Peek would have to demonstrate that there was some sort of actual

---

[9] Even including the individuals at the carpet mills in the relevant purchasing public, the Court concludes that three is not enough. *See Premier Comp Solutions*, 2012 WL 1038818, at *10–11 (collecting cases and deciding that dissemination to five people in a population of hundreds didn't cut it).

deception or a tendency to deceive in sending it out. *See Penrod*, 653 F.3d at 248. There is nothing in the record that indicates such deception. Even if the preliminary injunction order were procured with false testimony, the Plaintiffs here were nevertheless actually enjoined from engaging in the carpet cleaning business. The alleged false testimony would not deceive any member of the relevant purchasing public because it was a real-life injunction that was disseminated. It was not as if Whittaker disseminated an injunction that it did not have, or stated that the injunction prohibited the Plaintiffs from doing more than what they were actually prohibited from doing. Whittaker disseminated an actual injunction that had the full force of law. Here there was no actual deception or a tendency to deceive. Thus, Whittaker will be granted summary judgment on the Lanham Act claim.[10]

### IV. CONCLUSION

The Defendants' Motion for Summary Judgment will be granted.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: November 17, 2016

cc: All counsel of record

---

[10] The Court declines to reach the statute of limitations argument because there are sufficient substantive grounds on which the claim can be disposed of.